# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**MARTIN VICTOR HILL,**

      **Plaintiff,**

**v.**

**YOLANDA AGUINAGA, and
KEVIN MARMOR,**

      **Defendants.**

**CIVIL NO.  SA-12-CA-827-FB**

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**    **Honorable Fred Biery
Chief United States District Judge**

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas,[1] the following report is submitted for your review and consideration.

## I.  JURISDICTION

Plaintiff alleges subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1343(a)(3), and 1367.

## II.  SUMMARY OF PROCEDURAL HISTORY
## and ALLEGATIONS

Plaintiff Martin Hill ("Hill" or "plaintiff") initiated this action on September 4, 2012,

---

[1] Docket no. 11.

when he filed his request for leave to proceed IFP,[2] motion to allow electronic filing,[3] and

tendered for filing his proposed original complaint naming three defendants: the Texas

Department of Public Safety ("DPS"), DPS employee Yolanda Aguinaga (in her individual

capacity), and DPS Trooper Kevin Marmor (in his individual capacity) (collectively with

Aguinaga, "individual defendants").[4]  According to the proposed complaint, Hill, the driver of a

semi-truck, was in the sleeper berth of the truck on November 10, 2010, when the individual

defendants located at the Texas Department of Transportation Weigh Station in Devine, Texas

issued the co-driver of the truck a citation because the truck was overweight.[5]  The complaint sets

out ten causes of actions, discussed further below; each of the counts generally concern

plaintiff's objection to the actions of the individual defendants and DPS when the individual

defendants caused the interruption of Hill's ten-hour rest period, as mandated by Federal Motor

Carrier Safety Administration ("FMCSA") regulations.[6]  More specifically, the original

complaint sets forth six claims under § 1983:

- count I – against the individual defendants for illegal search and seizure in violation of the Fourth, Fifth, and Fourteenth Amendments;[7]

- count II – against defendant Aguinaga for illegal search and seizure in retaliation "against Plaintiff for engaging in constitutionally protected speech and invoking

---

[2] Docket no. 1.

[3] Docket no. 2.

[4] Docket no 1, proposed complaint ("proposed complaint") at 1-3.

[5] Proposed complaint at 4.

[6] Id.

[7] Id. at 10.

2

his rights" in violation of the First, Fourth, Fifth, and Fourteenth Amendments;

- count III – against defendant Marmor for illegal "detention in retaliation against Plaintiff for engaging in constitutionally protected speech" in violation of the First, Fourth, and Fourteenth Amendments;[8]

- count IV – against defendant Marmor for demanding Hill's identification without probable cause or reasonable suspicion in violation of the Fourth, Fifth, and Fourteenth Amendments;[9]

- count V – against the individual defendants for malicious prosecution in violation of the Fourth and Fourteenth Amendments;

- count VI – against the individual defendants for violation of the Fourth and Fourteenth Amendments by (a) unreasonable search and seizure, (b) causing Hill's loss of personal liberty, (c) threatening Hill with prosecution and incarceration, (d) causing Hill's loss of income, and (e) causing Hill pain, suffering, sleep deprivation, emotional trauma, humiliation, and distress.[10]

The original complaint also asserts three claims under state law:

- count VII – against the individual defendants for false imprisonment;[11]

- count VIII – against the individual defendants for malicious prosecution; and

- count IX – against the individual defendants for intentional infliction of emotional distress.[12]

In addition, the complaint appears to propose a cause of action under 18 U.S.C. § 1951 for

interference with commerce by threats of violence.[13]

---

[8] Id. at 11.

[9] Id. at 11-12.

[10] Id. at 12.

[11] Id. at 12-13.

[12] Id. at 13.

[13] Id. at 11.

On September 7, 2012, Hill's motion for IFP and proposed complaint were informally referred to the undersigned for consideration.[14] The same day, the undersigned entered an order to show cause that, in sum, held in abeyance Hill's motion for leave to proceed IFP, called upon Hill to file a long-form motion for leave to proceed IFP, and directed Hill to show cause, on or before September 21, 2012, why his request for leave to proceed IFP should not be denied as to certain of his proposed claims.[15] The order to show cause included a brief notice to Hill of the reasons why some of Hill's causes of action appeared to be frivolous or appeared not to state claims for relief,[16] and stated:

> plaintiff must provide a response of no more than five pages that provides, in sum: (1) discussion and authority for why (a) DPS is not immune from each of plaintiffs' claims against it; (b) plaintiff can allege violations of the Fifth Amendment against any defendant; (c) count III is a different cause of action than count II; (d) counts IV and VI are separate causes of action from count I; (e) count V states a recognized cause of action [for malicious prosecution in violation of the Fourth Amendment]; (f) plaintiff has a private cause of action under 18 U.S.C. § 1951; and (2) a particularized statement of facts and authority to support count VIII [for state law malicious prosecution] to show the count states a claim for relief.[17]

On September 20, 2012, Hill filed a long-form application to proceed IFP, motion to extend the time for his response to the show cause order, and a second motion to allow electronic filing.[18] On September 24, 2012, the undersigned entered an order mooting Hill's motions to allow electronic filing "subject to plaintiff submitt[ing] a fully competed 'E-Filing and E-

---

[14] See text-only order dated September 9, 2012.

[15] Docket no. 3 at 12-13.

[16] Id. at 10-12.

[17] Id. at 12-13.

[18] Docket nos. 4, 5, and 6.

Noticing Registration Form' that may be approved by the Office of the District Clerk" and granting Hill an extension of time until October 15, 2012 to respond to the September 7 show cause order.[19]  On October 3, 2012, Hill filed his response to the show cause order.[20]

On October 24, 2012, the undersigned issued a report that recommended the Court grant in part and deny in part plaintiff's motion for leave to proceed IFP.[21]  More specifically, the Court recommended, in part:

- Hill's motions to proceed IFP should be granted with respect to five proposed claims under: (1) §1983 against the individual defendants for alleged illegal search and seizure on November 10, 2010, in violation of Hill's Fourth and Fourteenth Amendment rights; (2) §1983 against the individual defendants for alleged retaliation on November 10, 2010, in violation of Hill's First Amendment free speech rights; (3) §1983 against Marmor for his alleged illegal demand on November 10, 2010, that Hill produce his identification without reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments; (4) under state law against the individual defendants for alleged false imprisonment on November 10, 2010; and (5) under state law against the individual defendants for alleged intentional infliction of emotional distress on November 10, 2010; and

- Hill's motions to proceed IFP should be denied with respect to each of his proposed claims against DPS, which necessarily would include any claim asserted against the individual defendants in their official capacities, and his proposed claims against the individual defendants (1) under § 1983 for alleged violations of the Fifth Amendment and alleged malicious prosecution; (2) under state law for alleged malicious prosecution; and (3) under 18 U.S.C. § 1951.[22]

The report liberally and collectively construed plaintiff's <u>pro se</u> submissions, but also stated:

In an abundance of caution, and to be clear, simply because the Court concludes

---

[19] Docket no. 7 at 3 and 4.

[20] Docket no. 8.

[21] Docket no. 9.

[22] <u>Id.</u> at 21.

plaintiff has alleged sufficient facts to allow the Court to grant Hill's motion for IFP does not mean that any defendant, following service of the original complaint, may not file a motion to dismiss any of the claims for the reason plaintiff has not stated a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure or may not file any other challenge to the sufficiency of the statement of any claim. This ruling is limited to the question of Hill's IFP status.[23]

No party filed an objection to the October 24 report. On February 27, 2013, the District Court accepted the recommendations in the October 24 report.[24] The District Clerk's Office filed plaintiff's original complaint as of the date of the District Court's order.[25] Thus, plaintiff's original complaint is plaintiff's "live" pleading, but, in accordance with the District Court's ruling, the only claims in the original complaint that are operative claims are the claims for which plaintiff had been granted leave to proceed IFP, namely: (1) §1983 claims against Marmor and Aguinaga in their individual capacities for: (a) alleged illegal search and seizure on November 10, 2010, in violation of Hill's Fourth and Fourteenth Amendment rights; (b) alleged retaliation on November 10, 2010, in violation of Hill's First Amendment free speech rights; (2) §1983 claim against Marmor in his individual capacity for his alleged illegal demand on November 10, 2010 that Hill produce his identification allegedly without reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments; and (3) state law claims against Marmor and Aguinaga in their individual capacities for: (a) alleged false imprisonment on November 10, 2010; and (b) alleged intentional infliction of emotional distress on November 10, 2010.

_____

[23] Id. at 20.

[24] Docket no. 11.

[25] Docket no. 12 ("original complaint").

Summons issued, defendants Marmor and Aguinaga were served, and each defendant filed answers to plaintiff's complaint on April 1, 2013.[26] On April 5, 2013, defendants filed a joint motion for partial summary judgment seeking the dismissal of Hill's claims against them for false imprisonment and intentional infliction of emotional distress for the reason that Hill's state tort claims are barred by § 101.106 of the Texas Civil Practice and Remedies Code.[27] In addition, defendants noted that negligent infliction of emotional distress is not a tort recognized by Texas law.[28] On April 8, 2013, the Court entered an order requiring plaintiff to file any response to the motion on or before April 19, 2013.[29] On April 18, 2013, Hill filed his response in opposition.[30]

On April 18, 2013, the Court issued a report that recommended: (a) defendants Aguinaga and Marmor's motion for partial summary judgment be granted, and (b) plaintiff's state law claims against Marmor and Aguinaga for false imprisonment and intentional infliction of emotional distress be dismissed with prejudice.[31] On May 22, 2013, the District Court accepted the recommendation in the April 18 report.[32] On May 28, 2013, the Court entered the scheduling order, which set certain pretrial deadlines as follows: ADR meditation to be completed by July 1,

---

[26] Docket nos. 18, 19.

[27] Docket no. 21.

[28] Id. at 2 n.1.

[29] Docket no. 22.

[30] Docket no. 23.

[31] Docket no. 24.

[32] Docket no. 25.

2013; amended pleadings to be filed by July 30, 2013; discovery to be completed by October 1, 2013; and dispositive motions to be filed by November 5, 2013.[33]

On June 4, 2013, the individual defendants filed their initial disclosures.[34] On June 11, 2013, plaintiff filed his initial disclosures.[35] On July 1, 2013, plaintiff submitted his witness and exhibit list and his notice of submission of a written offer of settlement.[36] The same day, the parties filed a joint ADR report.[37] On August 10, 2013, plaintiff filed his first set of requests for production.[38] On August 19, 2013, the individual defendants filed their witness list and exhibit list.[39] On August 26, 2013, the individual defendants filed an opposed motion for a protective order, requesting discovery be limited "pending a determination of their entitlement to qualified immunity."[40] The same day, the Court ordered plaintiff to respond to the opposed motion for protective order on or before September 9, 2013.[41] On August 29, 2013, the undersigned granted the parties' joint motion to extend scheduling order deadlines; the deadlines were reset as follows: discovery to be completed by January 1, 2014; dispositive motions to be filed by

---

[33] Docket no. 27.

[34] Docket no. 28.

[35] Docket no. 29.

[36] Docket nos. 32, 33.

[37] Docket no. 34.

[38] Docket no. 35.

[39] Docket nos. 36, 37.

[40] Docket no. 38 at 1.

[41] Docket no. 39.

February 5, 2014.[42]  On September 9, 2013, after Hill entered his response in opposition, the

Court granted the individual defendants' motion for protective order, limiting discovery to issues

relevant to qualified immunity.[43]

On January 31, 2014, Aguinaga and Marmor filed a joint motion for summary judgment

based on the defense of qualified immunity.[44]  The individual defendants submit only one exhibit

in support of their motion: Hill's unsworn statement dated November 19, 2010.[45]  On February 3,

2014, Hill filed a cross-motion for summary judgment.[46]  Attached to his motion, plaintiff

submits: defendants' initial disclosures, including the DPS investigation; the Federal Motor

Carrier Safety Administration ("FMCSA") guide to hours of service; transcripts of the

interactions with Marmor and Aguinaga; Hill's statement dated November 19, 2010; the letter

from Captain Plunk to Hill; and plaintiff's initial disclosures.[47]  The same day, Hill entered a

---

[42]  Docket no. 40 and un-numbered text-only order dated August 29, 2013.

[43]  Docket nos. 41, 42.  See also docket nos. 43 (untimely filed memorandum in opposition to the individual defendants' motion for protective order), 44 (order denying memorandum in opposition).

[44]  Docket no. 45.

[45]  Id., appendix ("Hill statement") at 1.  Although titled as "affidavit," Hill's statement is not sworn.  See id.

[46]  Docket no. 46.

[47]  Id., exhibit 1 (defendants' initial disclosures, including DPS investigation); exhibit 2 (FMCSA Interstate Truck Driver's Guide to Hours of Service ("FMCSA guide")); exhibit 3 (audio transcripts); exhibit 4 (Hill statement); exhibit 5 (Capt. Plunk's letter to Hill); and exhibit 6 (plaintiff's initial disclosures).  Plaintiff references several audio and video clips he made during his interactions with defendants.  Plaintiff did not offer the clips as evidence, instead offering transcripts of the clips.  See id., exhibit 3, audio transcripts.  The Court listened to the audio files and viewed the video files.  Neither the audio nor the video clips differ substantially from the summaries given in the evidence submitted with plaintiff's response.  See Scott v. Harris, 550 U.S. 372, 378-81, 127 S.Ct. 1769, 1774-76 (2007) (the lower courts were wrong to

response to the individual defendants' motion for summary judgment, and attached the defendants' initial disclosures, including the DPS investigation, and the FMCSA guide.[48] On February 12, 2014, defendants Marmor and Aguinaga filed a reply in support of their joint motion for summary judgment.[49] On February 12, 2014, plaintiff filed a "reply in response to defendants' reply to plaintiff's memorandum in opposition to defendants' motion for summary judgment," namely, a surreply.[50] Plaintiff attaches to his surreply, copies of defendants' initial disclosures, the DPS investigation, a transcript of the recordings made during the interaction, and a print-out from the FMCSA concerning hours of service.[51] On February 13, 2014, Marmor and Aguinaga filed a joint response to Hill's motion for summary judgment.[52] To date, Hill has not filed a reply in support of his cross-motion for summary judgment, and the time to do so has expired.

--------

accept the version of facts provided by the plaintiff when that version was blatantly contradicted by a videotape of the incident).

[48] Docket no. 47, attached exhibits.

[49] Docket no. 50.

[50] Docket no. 51.

[51] Id., exhibit A (defendants' initial disclosures, including the DPS investigation), exhibit B (Capt. Plunk's letter to Hill), exhibit C (audio transcripts), and exhibit D (FMCSA "hours-of-service regulations"). The procedural rules do not allow any party to automatically file a surreply. Hill did not file a motion for leave to file a surreply and has identified no argument raised by defendants in their reply that would require a response and a response including exhibits. Thus, the Court has ample grounds to strike the surreply and not consider it. Nevertheless, in the interest of providing a comprehensive report to the District Judge, this report has fully considered the sur-reply and its attachments and has carefully reviewed all aspects of the summary judgment record, whether or not referenced in this report.

[52] Docket no. 52.

## III.  ISSUES

1.       Whether Marmor and Aguinaga's joint motion for summary judgment should be
         granted or denied; and

2.       Whether Hill's motion for summary judgment should be granted or denied.

## IV.  STANDARDS

**A.       Rule 56 of the Federal Rules of Civil Procedure**

The standard to be applied in deciding a motion for summary judgment is set forth in

Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as a
> matter of law.[53]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[54]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[55]  A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party.[56]  Therefore, summary judgment is proper if, under governing

laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could

resolve a factual issue in favor of either party, summary judgment should not be granted.[57]

---

[53]  FED. R. CIV. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548,
2552 (1986).

[54]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).

[55]  Id. at 248, 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[56]  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Wise v. E.I. DuPont De Nemours &
Co., 58 F.3d 193, 195 (5th Cir. 1995).

[57]  Anderson, 477 U.S. at 249, 106 S. Ct. at 2510.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[58]  The burden then shifts to the party opposing the motion to present affirmative evidence to defeat a properly supported motion for summary judgment.[59]  All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment.[60]  "The court need

[58]  Fed. R. Civ. P. 56(c)(1) provides:
Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
Fed. R. Civ. P. 56(c)(1).  See also Celotex, 477 U.S. at 323, 106 S. Ct. at 2552-53.

[59]  Anderson, 477 U.S. at 257, 106 S. Ct. at 2514-15.

[60]  Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007); Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).  The Supreme Court explained in Scott that:
At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to [the] facts.  As we have emphasized,  "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmonving party, there is no 'genuine issue for trial.'"  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."
550 U.S. at 380, 127 S. Ct. at 1776 (emphasis in original) (quoting Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356

consider only the cited materials, but it may consider other materials in the record."[61] Summary judgment motions permit the Court to resolve a lawsuit without the necessity of a trial if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[62] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[63]

If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."[64] The movant "must demonstrate the absence of a genuine issue of material fact, but does not have "to negate the elements of the nonmovant's case."[65] "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.[66] On the other hand, if the movant meets its burden and the non-movant cannot provide some evidence to support its claim,

---

(1986); Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510).

    [61] FED. R. CIV. P. 56(c)(3).

    [62] See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

    [63] FED. R. CIV. P. 56(c)(2).

    [64] Duffie v. United States, 600 F.3d 362, 371 (5th Cir.) (citing Celotex, 477 U.S. at 325, 106 S.Ct. at 2554) (internal punctuation omitted), cert. denied __ U.S. __, 131 S. Ct. 355 (2010).

    [65] Duffie, 600 F.2d at 371; Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

    [66] Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

summary judgment is appropriate.[67]  The Court may enter an order that does not grant all the

relief requested by the motion, but states that "any material fact—including an item of damages

or other relief—that is not genuinely in dispute and treating the fact as established in the case."[68]

If the nonmovant cannot adequately defend against a motion for summary judgment, the

remedy is a motion for relief under Rule 56(d), which provides:

> (d)  When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by
> affidavit or declaration that, for specified reasons, it cannot present facts essential
> to justify its opposition, the court may:
> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.[69]

Discovery motions under Rule 56(d) are "broadly favored and should be liberally granted

because the rule is designed to safeguard non-moving parties from summary judgment motions

that they cannot adequately oppose."[70]  To be entitled to a continuance of a summary judgment

proceeding to obtain further discovery prior to a ruling on a motion for summary judgment, the

party opposing the motion must demonstrate how additional time and discovery will enable the

---

[67] FED. R. CIV. P. 56(e); Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111 (2002).

[68] FED. R. CIV. P. 56(g).

[69] See FED. R. CIV. P. 56(d).

[70] Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (discussing Rule 56(f)) (internal punctuation omitted); Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir.2006) (same); International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (explaining that under Rule 56(f), "[w]here the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (citation and internal punctuation omitted), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992); see also Sapp v. Memorial Hermann Healthcare Sys., 406 Fed. A'ppx 866, 869 (5th Cir. 2010).

party to rebut the movant's allegations there are no genuine issue of material fact.[71]

## B.     Section 1983

Section 1983 does not create any substantive rights, but instead provides a remedy for

violations of federal statutory and constitutional rights.[72]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.[73]

In order to state a cause of action under § 1983, a plaintiff's claim for relief must allege facts

establishing that: (1) plaintiff has been deprived of a right secured by the Constitution or laws of

the United States; and (2) defendant acted under color of state law.[74]  The Fifth Circuit has held

that "section 1983 imposes liability for violations of rights secured by the Constitution, not

violations of duties of care arising out of tort law."[75]

---

[71]  See Raby, 600 F.3d at 561 (request for stay "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion") (citations and internal punctuation omitted).

[72]  LaFleur v. Tex. Dep't of Health, 126 F.3d 758, 759 (5th Cir. 1997); Jackson v. City of Atlanta, Tex., 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818, 117 S. Ct. 70 (1996).

[73]  42 U.S.C. § 1983.

[74]  Doe ex rel. Magee v. Covington Cnty. Sch. Dist., 675 F.3d 849, 854 (5th Cir. 2012); Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997), cert. denied, 525 U.S. 822, 119 S. Ct. 65 (1998); Fyfe v. Curlee, 902 F.2d 401, 403 (5th Cir. 1990); Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989).

[75]  Lynch v. Cannatella, 810 F.2d 1363, 1375 (5th Cir. 1987).

## C.    Qualified Immunity

Qualified immunity shields certain public officials performing discretionary functions from civil damage liability if their actions could reasonably have been thought consistent with the rights they are alleged to have violated.[76]  Once a defendant raises the qualified immunity defense, "*plaintiff* has the burden to rebut" the defense.[77]  Whether a defendant is entitled to immunity from suit as a result of qualified immunity is a two step inquiry: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether plaintiff has raised a genuine issue of material fact that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[78]

"Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[79]  "[L]ower courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.'"[80]  "Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively

---

[76]  Duckett v. City of Cedar Park, 950 F.2d 272, 279 (5th Cir. 1992).

[77]  Austin v. Johnson, 328 F.3d 204, 208 n. 6 (5th Cir. 2003); Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 456 (5th Cir. 2001); Pierce v. Smith, 117 F.3d 866, 871-72 (5th Cir. 1997).

[78]  Michalik v. Hermann, 422 F.3d 252, 257-58 (5th Cir. 2005); Jacobs v. W. Feliciana Sheriff's Dept., 228 F.3d 388, 393 (5th Cir. 2000) (citing Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998)).

[79]  Anderson v. Creighton, 483 U.S. 635, 640 , 107 S. Ct. 3034, 3039 (1987); Michalik, 422 F.3d at 258; Thompson, 245 F.3d at 457.

[80]  Collier v. Montgomery, 569 F.3d 214, 217-18 (5th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 241-42, 129 S. Ct. 808, 821 (2009)).

reasonable."[81]

The Fifth Circuit has encouraged the district courts to require highly fact-specific pleading by a plaintiff in a § 1983 lawsuit who attempts to overcome a plea of qualified immunity.[82] "'[P]laintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense.' A complaint which raises the likely issue of immunity cannot be cast in 'broad, indefinite and conclusory terms,' but must include detailed facts supporting the contention that the plea of immunity cannot be sustained."[83] "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[84] "Qualified immunity purposefully shields police officers' split-second decisions made without clear guidance from legal rulings."[85]

## V. DISCUSSION

A.  **Defendant Marmor and Aguinaga's joint motion for summary judgment**

1.  **summary of facts**

Except as may be noted otherwise, the parties do not appear to contest the following facts

---

[81] <u>Duckett</u>, 950 F.2d at 280.

[82] <u>Hick v. Bexar Cnty., Tex.</u>, 973 F. Supp. 653, 673 (W.D. Tex. 1997) (citations omitted), <u>aff'd</u>, 137 F.3d 1352 (5th Cir. 1998).

[83] <u>Hick</u>, 973 F. Supp. at 673 (citations omitted). <u>See also</u> <u>Baker v. Putnal</u>, 75 F.3d 190, 195 (5th Cir. 1996).

[84] <u>Pasco v. Knoblauch</u>, 566 F.3d 572, 581 (5th Cir. 2009) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986)).

[85] <u>Id.</u> at 582.

for the purposes of their cross-motions for summary judgment.[86]  The summary is set out in this report to provide a context for the parties' arguments.

On November 10, 2010, while plaintiff was off-duty in the sleeper berth of a semi-truck,[87] his co-driver, who was driving the truck, was stopped at a weigh station near Devine, Texas, and issued a citation because the truck was overweight.[88]  Hill's co-driver woke Hill and informed him the officer wanted to see his driver's license.[89]  Both men exited the vehicle, and after waiting for an officer in the weigh station office, Hill returned to the truck alone.[90]  Aguinaga approached Hill and asked to see his identification, which Hill refused to provide after verifying it was a request, and not a demand, for identification.[91]  Hill returned to the semi-truck.[92]

---

[86]  The facts are drawn from the summary judgment record, which includes, among other things, plaintiff's unsworn statement, and Marmor and Aguinaga's unsworn statements.  Marmor and Aguinaga submit plaintiff's unsworn, pre-suit statement as the single exhibit in support of their motion (with no authenticating cover affidavit or declaration).  Hill does not object to defendants' reliance on his statement, and submits another copy of the same statement as an attachment to his response to defendants' motion as well as his motion for summary judgment.  Similarly, Hill submits documents collected in the DPS investigation of plaintiff's pre-suit administrative complaint in his summary judgment submissions, a record that includes Marmor and Aguinaga's unsworn, pre-suit statements (with no authenticating cover affidavit or declaration).  Marmor and Aguinaga do not object to the statements or other DPS documents plaintiff submits.

[87]  The parties refer to the vehicle in question as a truck or a semi-truck; it appears to be uncontested that the truck was a commercial semi-trailer used to transport items in commerce.

[88]  Docket no. 45, Hill statement at 1; docket no. 47, DPS investigation at 11 (Aguinaga statement), 14 (citation issued to Hill's co-driver).

[89]  Hill statement at 1.

[90]  Id.; docket no. 47, DPS investigation at 11.

[91]  Hill statement at 1-2; docket no. 47, DPS investigation at 11.

[92]  Hill statement at 2.

Marmor then approached Hill who was then inside the truck and, in sum, told Hill he was requiring Hill to produce identification, not merely requesting it and informed Hill that failing to identify was a jailable offense.[93]  Hill then provided his identification (a driver's license) to Marmor.[94]  Marmor left Hill in the truck, brought Hill's identification to Aguinaga who was with the driver in the weigh station,[95] and later returned Hill's identification to him in the truck.[96]

### 2.    summary of arguments

Marmor and Aguinaga have raised the defense of qualified immunity to plaintiff's claims of illegal search and seizure, illegal demand for identification, and retaliation.[97]  In support, Marmor and Aguinaga rely upon Texas Transportation Code §§ 521.021 and 521.025, which state that a person "may not operate a motor vehicle on a highway in this state unless the person holds a driver's license" and shall "display the license on the demand of a magistrate, court officer, or peace officer."[98]  The individual defendants argue "[i]t was objectively reasonable for [them] to rely upon these laws when Aguinaga merely requested and []Marmor later demanded

---

[93]  Id.; docket no. 47, DPS investigation at 7 (Marmor statement).

[94]  Hill statement at 2; docket no. 47, DPS investigation at 7.

[95]  Hill statement at 2; docket no. 47, DPS investigation at 7.  There is a discrepancy between Hill and Marmor over what occurred after Hill provided his identification: Hill states Marmor "walked back towards Aguinaga, who had left [the co-driver] in the DOT office alone while she waited for the officer to get my license."  Docket no. 45, Hill statement at 2.  On the other hand, Marmor states Hill's driver's license "was checked via in-car computer."  Docket no. 47, DPS investigation at 7.

[96]  Hill statement at 2; docket no. 47, DPS investigation at 7.  Apparently, Aguinaga issued Hill's co-driver a citation because the truck was overweight and, thereafter, the co-driver, Hill, and their truck departed the weigh station.  See docket no. 47, DPS investigation at 14.

[97]  Docket no. 45.

[98]  Id. at 4 (quoting Tex. Transp. Code §§ 521.021, 521.025).

Hill's [commercial driver's license] and therefore they are entitled to qualified immunity from this claim."[99] Marmor and Aguinaga further assert there was no violation of Hill's right to free speech, and their request to inspect Hill's commercial driver's license was objectively reasonable.[100]

As support, the individual defendants attach Hill's statement, in which Hill states he was off-duty in the sleeper berth of a semi-truck when his co-driver, who was driving the truck, was stopped at a weigh station in Devine, Texas, because the truck was overweight.[101] Hill's co-driver woke Hill up and informed him the officer, Aguinaga, wanted to see his driver's license.[102] Both men exited the vehicle, and Hill noticed another officer, Marmor, at the back of the truck who proceeded to break the seal on the trailer.[103] Hill asked Marmor why he had been awakened.[104] According to Hill, Marmor replied "[w]e like to know who we're dealing with."[105] After waiting in the weigh station office, Hill proceeded to return to the truck.[106] On the way back to the truck, Aguinaga approached Hill, and Hill asked why he was awakened and made to

---

[99] Id.

[100] Id.

[101] Id., Hill statement at 1.

[102] Hill statement at 1.

[103] Id.

[104] Id.

[105] Id.

[106] Id.

leave the sleeper berth.[107]  According to Hill, Aguinaga stated she asked the co-driver to obtain

Hill's license.[108]  Hill responded that "other people do not have access to or possession of [his]

driver's license," and he was off-duty in the sleeper berth.[109]  Aguinaga requested his

identification, which Hill refused after verifying it was a request and not a demand for

identification.[110]  Hill returned to the semi-truck, at which point Marmor jumped up on the

running board and put his arms through the open passenger window.[111]  Hill states "[o]bviously,

Aguinaga had told him I had not ID'd and told him to go after me."[112]  Marmor refused to

identify himself, only saying he had the badge and the gun, and demanded Hill's identification.[113]

Marmor informed Hill that failing to identify was a jailable offense, and it was Texas policy to

identify everyone.[114]

In response, plaintiff asserts that a person in a sleeper berth is not operating a motor

vehicle under Texas Transportation Code section 521.021 or under FMCSA Regulations.[115]  He

further argues that, because a person in a sleeper berth cannot be also operating a motor vehicle,

---

[107]  Id. at 1-2.

[108]  Id. at 1.

[109]  Id. at 1-2.

[110]  Id. at 2.

[111]  Id.

[112]  Id.

[113]  Id.

[114]  Id.

[115]  Docket no. 47 at 5-7.

his Fourth Amendment right to privacy and to be free from "compulsory, warrantless ID checks" was violated and "the state of the law at the time of the alleged violation gave the defendants fair warning that their particular conduct was unconstitutional."[116]  Plaintiff asserts the "Fourth Amendment requires that an arrest be grounded in probable cause," and there was no probable cause for demanding his identification.[117]  Hill concludes because the "constitutional violation was 'self-evident,'" the individual defendants are not entitled to qualified immunity.[118]  Plaintiff attaches several exhibits to his response; pertinently summarized below.[119]

Plaintiff relies in part on a letter he received from Captain Kenneth Plunk of the DPS, regarding a complaint plaintiff filed against Aguinaga and Marmor.  In the letter, Captain Plunk states that, after a review of plaintiff's complaint, "corrective action was needed and additional training has been taken. . . . There will be no further Departmental action."[120]  In an interoffice memorandum dated December 15, 2010, Captain Plunk states

> it is a legal practice to attempt identification of the driver and passengers, regardless if articulated facts exist to support this request for identification. Though there may be no issue with attempting to identify a passenger, unless you have an articulate reason regarding your or other's safety or criminal activity is present, the passenger is under no obligation to comply with this request.  When Mr. Hill asked Trooper Marmor if he (Marmor) was requesting or demanding his driver license, Trooper Marmor stated "I'm telling you" this statement is not a

---

[116] Id. at 9.

[117] Id.

[118] Id.

[119] Id., exhibit A (defendants' initial disclosures), exhibit B (DPS investigation), and exhibit C (FMCSA Interstate Truck Driver's Guide to Hours of Service).

[120] Id., exhibit B, DPS investigation at 1.

request it is a demand.[121]

Further, Captain Plunk states Marmor "did tell [Hill] it was a 'jailable offense' for Failure to Identify," a charge which "would not be applicable to" that situation.[122]  In an interoffice memorandum written to Captain Plunk, dated December 9, 2010, Sergeant Chris McGuairt, also of the DPS, writes "it is legal practice to attempt identification of the driver and all passengers, regardless if articulated facts exists to support this request for identification. . . 'to ensure a co-driver exists.'"[123]  Sergeant McGuairt's memorandum states Hill exited the sleeper berth on his own accord, without any instruction.[124]  Sergeant McGuiart concluded by stating he saw no need for any future investigations by the DPS because Aguinaga did not violate any law or policy and Marmor received additional training for his failure to identify himself to Hill.[125]

Defendant Marmor provided a written statement to Sergeant McGuairt, detailing his two interactions with Hill.  Marmor states he first interacted with Hill while Marmor was in the process of searching the trailer; Hill approached Marmor and asked why he was "requested to leave the sleeper berth and go to the office."[126]  Marmor states he "advised [Hill] that [Marmor] could not answer that but [Aguinaga] probably just wanted his Driver's License and that [Hill]

---

[121] Id. at 2.

[122] Id.

[123] Id. at 4.  The memorandum further states the policy originated after discovering one bus company falsified log books, "stating a co-driver existed when in fact he/she did not."  Id.

[124] Id.

[125] Id. at 6.

[126] Id. at 7.

did not need to go to the office."[127]   Marmor states his next and final interaction with Hill was at the vehicle, after Aguinaga informed him Hill refused to present identification.   Marmor asserts he approached Hill as Hill entered the passenger side door of the truck and sat in the passenger seat, Marmor then "advised [Hill] he [(Marmor)] would need to see [Hill's] Driver License."[128] Marmor further states he "explained that the reason for identifying [Hill] was a common practice and that all passengers in a vehicle or commercial vehicle that had been stopped would be identified."[129]

Defendant Aguinaga also provided a statement to Sergeant McGuairt.   Aguinaga reports that, in the early evening of November 10, 2010, she inspected a truck and trailer "due to the heaviness on the rear tandem of the trailer."[130]   She requested the driver to remove the seal on the trailer for an inspection of the load, and watched as the driver removed the seal.[131]   She then asked the driver to "join [her] in the office with required paperwork;" specifically, Aguinaga states she asked the driver for his commercial driver's license and asked him to bring the off-duty co-driver's (Hill's) commercial driver's license as well because "[i]t is a common practice with me to always ask for the co-drivers [commercial driver's license]," as Aguinaga wishes to verify "a co-driver really exists, and also to make sure they don't have a warrant."[132]   Aguinaga then

---

[127] Id.

[128] Id.

[129] Id.

[130] Id. at 11.

[131] Id.

[132] Id.

took a new seal out to Marmor to replace the one she'd asked the driver to remove prior to the inspection.[133]  On her way to the truck with the new seal, she passed the driver and Hill and told them to have a seat in the office while she placed the seal on the trailer.[134]  As Aguinaga returned to the office after replacing the seal, she ran into Hill walking back to the truck.[135]  Hill inquired why Aguinaga woke him up, Aguinaga replied she did not tell the driver to wake Hill, only to bring Hill's commercial driver's license with him to the office.[136]  Then Aguinaga asked Hill to produce his driver's license and Hill refused.[137]  Specifically, Aguinaga

> then ran into the co-driver walking back to the truck and I said to him, "are you the co-driver?"  He said, "Yes, and I don't know why you had to wake me up!" I said, "I'm sorry I didn't tell the driver to wake you up, I only asked him to bring your [commercial driver's license] with him to the office." I then said, "did you leave your [commercial driver's license] in the office?" He then said, "Well is that a request or an order?" I said, "that's a request sir." The co-driver then said, "Well I know my rights and since that's a request, then I refuse!" I said, "Okay, that's fine sir." I then turned and walked away. This was the last contact I had with the co-driver.[138]

Aguinaga states she informed Marmor that Hill was refusing to give her his commercial driver's license and "was angry for being woken up."[139]

---

[133]  Id.

[134]  Id.

[135]  Id.

[136]  Id.

[137]  Id.

[138]  Id.

[139]  Id.  There is a discrepancy between Marmor and Aguinaga's statements regarding how Aguinaga informed Marmor of Hill's refusal to provide identification.  Marmor states Aguinaga informed him via telephone, see id. at 7, while Aguinaga states she informed him in person, see id. at 11.

The DPS investigation references several audio and video clips plaintiff made during his interactions with defendants. Plaintiff did not offer the clips as evidence, instead offering transcripts of the clips.[140]

In reply, defendants assert it was objectively reasonable for Marmor to assume that a demand for Hill's commercial driver's license, as a co-driver of the vehicle, was constitutional, and that Marmor's actions, based upon his assumption that he was making a constitutional demand, were objectively reasonable.[141] Defendants further argue the disagreement between Sergeant McGuiart and Captain Plunk over the appropriateness of Marmor's actions further justifies a finding of qualified immunity, because "[i]f officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact."[142]

In his surreply, Hill contends the rights violated by the individual defendants were clearly established and "[d]efendant Marmor's actions were not 'objectively reasonable.'"[143] Plaintiff argues the results of the DPS investigation show his constitutional rights were clearly established and "Marmor and Aguinaga were clearly in the wrong."[144] Specifically, Hill relies on Captain Plunk's statements in his letter to Hill stating "corrective action was needed" and "additional

---

[140] See supra note 47.

[141] Docket no. 50 at 2.

[142] Id. at 1 (quoting Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005)).

[143] Docket no. 51 at 8.

[144] Id. at 2-3.

training has been taken."[145]  Plaintiff asserts the letter from Captain Plunk is an official admission of wrongdoing that defeats any claim of qualified immunity.[146]

### 3.    analysis

Whether a government official is entitled to qualified immunity, to the extent it turns on a question of law, is a matter that may be properly addressed on summary judgment and requires a two-step analysis: (1) "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right;"[147] and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[148]

As noted, Hill's remaining claims and arguments center on three main issues: illegal demand for identification, illegal search and seizure, and retaliation.  To be clear, with respect to defendants' motion for summary judgment, the Court views the facts in the light most favorable to Hill, the non-moving party, and draws all inferences from those facts in his favor.[149]  Defendants' central argument in support of their request for summary judgment is based on qualified immunity.  Although somewhat duplicative, the Court separately discusses the question of defendants' qualified immunity in reference to Hill's three main claims.

---

[145]  Id. at 3 (citing DPS Investigation at 1).

[146]  Id. at 4.

[147]  Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)).

[148]  Saucier, 533 U.S. at 202, 121 S.Ct. at 2156.

[149]  Scott, 550 U.S. at 380-81, 127 S. Ct. at 1775-76; Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004).

### a. demand for identification

Hill argues defendant Marmor violated his constitutional rights under the Fourth and Fourteenth Amendment by demanding his identification allegedly without reasonable suspicion or probable cause. In cases where a constitutional violation regarding an arrest or detention is alleged under both the Fourth and Fourteenth Amendment, the Fifth Circuit has analyzed the issues in reference to the Fourth Amendment, not the Fourteenth Amendment.[150] Specifically, the Fifth Circuit has stated "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."[151] Hill has alleged an illegal demand for identification in violation of both the Fourth and Fourteenth Amendments, but he alleges no deprivation of a protected property interest or liberty interest independent of the alleged unlawful demand.[152] Therefore, this report applies a Fourth Amendment analysis to the claim.[153]

---

[150] Blackwell v. Barton, 34 F.3d 298, 302-03 (5th Cir. 1994) (qualified immunity barred § 1983 claim pleaded by plaintiff under the Fourth and Fourteenth Amendments).

[151] Id. at 302 (quoting Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989)).

[152] See Sanchez v. Stockstill, No. SA-04-CA-110, 2004 WL 2580768, at * 7 n.6 (W.D. Tex. Nov. 15, 2004) (applying "a Fourth Amendment analysis rather than using the Fourteenth Amendment's more generalized notions of due process," where no allegations established the deprivation of "a protected property or liberty interest independent of the alleged unlawful seizure").

[153] Barton, 34 F.3d at 302; Stockstill, 2004 WL 2580768, at * 7 n.6. Although plaintiff asserts a violation of the Fourteenth Amendment, he has not provided any allegations, evidence, or authority to substantiate a substantive due process claim. Plaintiff may not rely on unsubstantiated assertions to survive summary judgment. Freeman, 369 F.3d at 860.

Hill does not present summary judgment argument, authority and evidence to show the truck's stop at the weigh station or the citation issued to Hill's co-driver based on the truck being over-weight were invalid. Indeed, Hill does not raise as an issue, but agrees to agree, that the decision of his co-driver to pull into the open weigh station essentially was a "required" stop for the truck or present summary judgment argument and authority to show that the "required" stop of the truck was impermissible. Rather, Hill's main argument is that because he was not operating the truck or seated in a passenger seat, but was present in the sleeper berth, Marmor had "no right to randomly demand ID without cause."[154]

"In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."[155] Further, there is "no constitutional impediment to a law enforcement officer's request to examine a driver's license and vehicle registration . . . during a traffic stop and to run a computer check on both."[156] Although Hill raises no issue about the officers' request to his co-driver to produce his driver's license, and the limited detention required to examine the identification and truck and issue the ticket to the co-driver based on the truck being over-weight, Hill argues it was impermissible for Marmor to require him to produce his identification/commercial driver's license.

In United States v. Brigham, the Fifth Circuit addressed the "routine questioning of the occupants" of a vehicle stopped in a traffic stop in which officers uncovered, in a consensual

---

[154] Docket no. 47 at 3.

[155] Hiibel v. Sixth Judicial Dist. Ct. of Nevada, Humboldt Cnty., 542 U.S. 177, 185, 124 S. Ct. 2451, 2458 (2004).

[156] United States v. Brigham, 382 F.3d 500, 507-08 (5th Cir. 2004) (en banc).

search, more than five kilograms of a controlled substance, liquid codeine syrup.[157]  More specifically, in Brigham, a law enforcement officer stopped the vehicle Brigham was driving for a traffic violation.[158]  The law enforcement officer reviewed Brigham's driver's license as well as documents on the registration of the vehicle that showed the vehicle was a rental; the officer became suspicious when Brigham was not listed on the vehicle's rental agreement and the person listed as the lessee did not appear to be in the vehicle.[159]  The officer questioned Brigham about his travel plans and itinerary[160] and decided to question the vehicle's passengers to verify the information provided by Brigham.[161]  In the course of questioning the passengers, the officer asked to see their identification and ran computer checks on them.[162]  The trial court denied Brigham's motion to suppress and the Fifth Circuit affirmed, finding "the state trooper's investigatory procedures in this case were eminently reasonable under the totality of the circumstances" under the Fourth Amendment,[163] and specifically holding that "the Fourth Amendment permits a police officer to undertake . . . questioning of the vehicle's occupants to

---

[157]  Id. at 503.

[158]  Id. at 504.  Brigham did not challenge the initial traffic stop, instead arguing the officer exceeded the scope of the valid stop and unreasonably prolonged the detention of occupants.  Id. at 506.

[159]  Id. at 504.

[160]  Id.

[161]  Id.

[162]  Id. at 504-05.

[163]  Id.  at 503.

verify the information provided by the driver."[164]   The Fifth Circuit held the registration and

license checks on the vehicle and its occupants were within the legitimate scope of the traffic

stop, and would have been permissible even without any reasonable suspicion: "This procedure

would have been permissible even without the additional information [the officer] had gleaned,

which led to a reasonable suspicion that, at the very least, the vehicle might have been stolen."[165]

Six years later, in United States v. Pack, the Fifth Circuit affirmed the denial of a motion

to suppress filed by Pack, a passenger of a vehicle stopped by a trooper for a traffic violation, in

which officers later found in the trunk of the vehicle two duffle bags containing 17.91 pounds of

marijuana and a Luger pistol.[166]   More specifically, the trooper asked the driver and all

passengers of the vehicle to produce driver's licenses, then questioned the driver and Pack,

comparing their stories, asked for a canine to be transported to the scene; the dog alerted to the

trunk of the vehicle where officers found the drugs and firearm.[167]   A grand jury indicted Pack,

the passenger, for possession with intent to distribute the marijuana and carrying the firearm

during and in relation to a drug trafficking crime; Pack filed a motion to suppress, arguing, in

sum, the officer did not have the authority to require him to identify himself or question him.[168]

The trial court denied Pack's motion to suppress; Pack entered a conditional plea of guilty,

preserving his right to appeal the denial of his motion to suppress, and the Fifth Circuit

---

[164]   Id. at 508.

[165]   Id. at 509.

[166]   United States v. Pack, 612 F.3d 341, 344-46 (5th Cir.), modified, 622 F.3d 383 (5th Cir. 2010).

[167]   Id.

[168]   Id. at 351.

affirmed,[169] holding the officer can require all passengers in a vehicle stopped for a routine traffic violation to provide identification.[170]  The Fifth Circuit stated: "our en banc opinion in Brigham" "foreclosed" Pack's contention that the Fourth Amendment did not permit a police officer to require Pack to identify himself or to question him in an attempt to verify the information provided by the driver.[171]

Thus, Brigham and Pack appear to clearly establish that a law enforcement officer within the Fifth Circuit can require passengers in a validly stopped vehicle to produce identification. Although Hill argues the officers should not have disturbed him in the sleeper berth to ask for his identification, he provides no authority to show it was not permissible for them to ask him to produce identification even if it meant he needed to be awakened to do so.  For the right to be clearly established, this Court "must be able to point to controlling authority—or a robust, consensus of persuasive authority that defines the contours of the right in question with a high degree of particularity."[172]  Hill identifies no "robust consensus" of authority in the Fifth Circuit in support of his position.

With respect to the second part of the qualified immunity analysis, the Court cannot conclude it was objectively unreasonable for Marmor to Hill to produce identification.  Again, Hill was not operating the vehicle at the time it pulled into the weigh station nor was he seated

---

[169]  Id. at 345-47, 362.

[170]  Id. at 351.

[171]  Id. at 352.

[172]  Morgan v. Swanson, 659 F.3d 359, 371-72 (5th Cir. 2011) (citing Ashcroft v. al-Kidd, — U.S. —, 131 S. Ct. 2074, 2084 (2011)).

upright in a passenger seat.  But, defendants' uncontested summary judgment evidence, including

Marmor and Aguinaga's statements upon which Hill rely, provides that it is routine procedure for

all occupants of a vehicle stopped at the weigh station to identify themselves.[173]  In the absence of

a clearly established right, Marmor did not act unreasonably by relying on the Texas statutes and

DPS' routine policy.

In sum, although Hill argues his constitutional right to be free from a demand to produce

identification was "self-evident," that is clearly established, and Marmor acted unreasonably, this

Court cannot conclude that Hill has alleged a right so "clearly established at the time of the

violation" "it would have been clear to [Marmor] that his conduct was unlawful."[174]  Plaintiff has

not met the burden of overcoming the defense of qualified immunity on his claim of illegal

demand for identification.[175]

---

[173]  See docket no. 45, Hill statement at 2; docket no. 47, DPS investigation at 7. Specifically, Marmore states it was "a common practice that all passengers in a vehicle or commercial vehicle that had been stopped would be identified."  Docket no. 47, DPS Investigation at 7.  Aguinaga states "[i]t is a common practice with me to always ask for the co-drivers [commercial driver's license]" to verify "a co-driver really exists, and also to make sure they don't have a warrant."  Id. at 11.  Sergeant McGuairt confirmed "it is legal practice to attempt identification of the driver and all passengers . . . 'to ensure a co-driver exists.'"  Id. at 4.

In Texas, a driver must possess a valid driver's license and must display the license upon demand of a law enforcement officer.  Tex. Transp. Code §§ 521.021, 521.025 (West 2011).  Although not operating the vehicle at the time of its stop at the weigh station, Hill admits he was a "co-driver" of the truck.  Further, the commercial motor vehicle industry is a closely regulated industry (New York v. Burger, 482 U.S. 691, 702-09, 107 S. Ct. 2636, 2643-47 (1987)) and the regulatory scheme results in a diminished expectation of privacy.  United States v. Fort, 248 F.3d 475, 480 (5th Cir. 2001).

[174]  Davila, 713 F.3d at 257.

[175]  As noted, Hill argues that Marmor, not both Marmor and Aguinaga, violated his constitutional rights by demanding his identification.  To the extent the Court should understand Hill to argue that Aguinaga also improperly required him to identify himself, the argument should be rejected because Hill's alleged constitutional right to be free from a requirement to

### b.    illegal search and seizure

Hill argues the individual defendants violated his right to be free from illegal search and seizure under the Fourth and Fourteenth Amendments.[176]  Hill does not clearly specify when the alleged illegal search and seizure occurred.  Hill does not seem to contest the vehicle's stop at the weigh station.  Hill also presents no evidence or authority to show the operator of the vehicle at the time the vehicle pulled into the weight station did not properly receive a ticket because the vehicle was overweight.[177]  Similarly, Hill cannot successfully allege the detention that followed the stop violated his Fourth Amendment right because under the facts as alleged by Hill, the on-duty driver of the truck was still in the office, either waiting for or talking with Aguinaga when Marmor questioned Hill.[178]  The parties do not allege any facts establishing that Marmor's demand for Hill's identification prolonged the otherwise valid traffic stop.

Hill argues "[s]ince [he] had been legally off-duty and sleeping in bed, there was no reasonable suspicion or probable cause or emergency situation which justified the officer's demand for him to either wake up or leave the sleeper berth, or present his ID to any law enforcement officer or agency."[179]  But, Hill has not provided summary judgment argument,

_____

identify himself is not clearly established in the Fifth Circuit nor was the officer's conduct objectively unreasonable.

[176]  Original complaint at 10-12; docket no. 9 at 21.  See also note 153, supra, regarding Hill's asserted Fourteenth Amendment substantive due process violation.

[177]  The citation issued to Hill's co-driver is included with the DPS investigation record. Docket no. 47, DPS investigation at 14.

[178]  Docket no. 45, Hill statement at 2.  See Illinois v. Caballes, 543 U.S. 405, 407, 125 S. Ct. 834, 836-37 (2005) (police questioning that does not prolong a seizure does not provide a legitimate basis for a Fourth Amendment claim).

[179]  Original complaint at 5.

evidence, and authority to show it is clearly established that law enforcement officers cannot ask a person who is an off-duty co-driver found in a sleeper berth of a truck, even if it is necessary to wake that person, to produce a driver's license, when the vehicle is stopped at a weigh station. Under Fourth Amendment jurisprudence, it is permissible for officers to order passengers (that is, person(s) not operating the vehicle at the time of the stop) to exit the vehicle during a traffic stop,[180] identify themselves,[181] and can question them to verify information provided by the driver.[182] So long as the questioning does not unreasonably prolong the detention/seizure, the Supreme Court has held such questioning does not violate the Fourth Amendment.[183]

Hill has not demonstrated defendants violated a clearly established right when they required Hill to produce his commercial driver's license. Hill has not provided authority to show there is a "robust consensus" of case law to support his position.[184] Indeed, as discussed, the law in the Fifth Circuit appears to be clearly established directly to the contrary of plaintiff's position. Further, Hill has not demonstrated it was objectively unreasonable for Marmor and Aguinaga to "demand for him to either wake up or leave the sleeper berth, or present his ID."[185]

### c.    First Amendment retaliation

Hill asserts a claim for retaliation under the First Amendment. Plaintiff has provided

---

[180] See Maryland v. Wilson, 519 U.S. 408, 410, 117 S. Ct. 882, 884 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S. Ct. 330, 332 (1977).

[181] Pack, 612 F.3d at 351.

[182] Brigham, 382 F.3d at 508.

[183] Caballes, 543 U.S. at 407, 125 S. Ct. 836-37.

[184] Morgan, 659 F.3d at 371-72.

[185] Original complaint at 5.

only conclusory statements and assumptions that the individual defendants retaliated against him for refusing to identify himself.  Although the evidence is viewed in the light most favorable to Hill, he may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment.[186] Summary judgment is designed to isolate and dispose of factually unsupported claims or defenses.[187]  The only allegations in Hill's statement are conclusory.[188]  In his pleadings, Hill relies on discrepancies between Marmor's and Aguinaga's statements.[189]  Plaintiff has not provided support for his unsubstantiated assertion of First Amendment retaliation.  Once a defendant raises the qualified immunity defense, "*plaintiff* has the burden to rebut" the defense.[190] Therefore, defendants are entitled to the defense of qualified immunity on Hill's claim of retaliation.[191]

---

[186]  Freeman, 369 F.3d at 860.

[187]  Celotex, 477 U.S. at 323-24, 106 S. Ct. at 2552-53.

[188]  See docket no. 45, Hill statement at 2 ("Obviously, Aguinaga had told him I had not ID'd and told him to go after me.").

[189]  In his surreply, plaintiff states "the two defendants admittedly conspired to interfere with him further," "Marmor stated Aguinaga informed him (Marmor) via cell phone," but Aguinaga stated "she told Marmor in person, at his car window.  See docket no. 51 at 7.

[190]  Austin, 328 F.3d at 208 n. 6; Thompson, 245 F.3d at 456; Pierce, 117 F.3d at 871-72.

[191]  Hill also contends the FMCSA regulations require he get ten hours of uninterrupted off-duty time in the sleeper compartment; specifically, Hill argues "[e]xiting the sleeper berth for any reason violates FMCSA regulations and would subject [him] to criminal prosecution." Original complaint at 4.  But, Hill provides no authority to show that any violation of the regulations about rest period afforded the off-duty driver arising when hill exited the sleeper berth is not cured by Hill simply starting a new ten-hour clock of uninterrupted off-duty time such that the purported criminal violation would arise if Hill falsified his records of rest and off-duty time, not that he exited the compartment to comply with the request of a law enforcement officer.  Further, Hill's summary judgment evidence does not show that any officer required him

### d.    conclusion

In sum, although Hill argues that each of the alleged constitutional violations are "'self-evident' and do not require particularized case law to substantiate them,"[192] for a right to be clearly established, this Court "must be able to point to controlling authority—or a robust, consensus of persuasive authority that defines the contours of the right in question with a high degree of particularity."[193]    Further, a plaintiff "'must demonstrate prior to discovery that [his] allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense.'  A complaint which raises the likely issue of immunity cannot be cast in 'broad, indefinite and conclusory terms,' but must include detailed facts supporting the contention that the plea of immunity cannot be sustained."[194]    Thus, Hill has not established the violation of a clearly established right and he has failed to rebut the defense of qualified immunity on his claims of illegal demand, illegal search and seizure, and retaliation.

---

to exit the sleeper berth, only that he was required to produce identification.  See docket no. 47, DPS investigation at 11 (Aguinaga told Hill that she did not tell the truck's driver to wake up Hill, only to bring Hill's commercial driver's license to the office).  In any event, Hill provides no authority to show that a violation of the FMCSA regulations rises to the level of a constitutional violation cognizable under § 1983.  See LaFleur, 126 F.3d at 759; Jackson, 73 F.3d at 63; Covington Cnty. Sch. Dist., 675 F.3d at 854.

[192]  Docket no. 47 at 9.

[193]  Morgan, 659 F.3d at 371-72.

[194]  Hick, 973 F. Supp. at 673 (citations omitted).  See also Baker, 75 F.3d at 195.

**B.     Plaintiff's motion**

**1.      summary of arguments**

Although unclear, plaintiff appears to move for summary judgment on all three claims against the individual defendants, asserting "there is no genuine disputed issue as to any material fact."[195]  Plaintiff argues federal law requires commercial truck drivers to get uninterrupted sleep, and specifically, drivers must take eight consecutive hours in the sleeper compartment.[196] Plaintiff contends that, prior to February 27, 2012, on-duty time included any time spent in the truck but not in the sleeper berth, so when the subject of this lawsuit occurred, plaintiff "was required to have ten hours uninterrupted in the sleeper berth, not the present rule of 8 hours."[197] Plaintiff next argues truck driver accidents and fatalities due to interrupted sleep.[198]  Plaintiff then cites Supreme Court cases addressing warrantless searches and seizures.[199]  Finally, plaintiff concludes by arguing the "practice of complusory ID is unconstitutional under the U.S. Constitution," the rights are "clearly established," and "plaintiff is due judgment as a matter of law."[200]

---

[195]  Docket no. 46 at 1.

[196]  Id. at 8.

[197]  Id. at 8-9.

[198]  Id. at 9.

[199]  Id. at 10-14.

[200]  Id. at 14.

In response, defendants briefly assert Hill has failed to overcome their entitlement to the affirmative defense of qualified immunity.[201]  Specifically, Marmor and Aguinaga conclude, "[a]s [they] stated in both their motion for summary judgment and the reply to the Plaintiff's response to that motion, their actions were objectively reasonable based upon the law and circumstances and that were therefore entitled to qualified immunity."[202]

### 2.    analysis

As set out in the foregoing section of this report, plaintiff's cross-motion for summary judgment seeks entry of judgment as a matter of law on each of the claims at issue in the individual defendants' motion for summary judgment.  The Court has fully considered plaintiff's cross-motion for summary judgment when considering plaintiff's response to defendants Marmor and Aguinaga's motion.  For the reasons the Court recommends that defendants' motion for summary judgment be granted, this report recommends plaintiff's cross-motion be **denied**.

## VI.  RECOMMENDATIONS

Based on the foregoing, it is recommended that defendant Marmor and Aguinaga's motion for summary judgment[203] should be **GRANTED** and plaintiff's motion for summary judgment[204] should be **DENIED**.  If the District Judge accepts the rulings and recommendations in this report, there will be no remaining pending claims, and the District Judge can direct the Clerk's Office to enter final judgment in the case.

---

[201]  Docket no. 52.

[202]  Id. at 2.

[203]  Docket no. 45.

[204]  Docket no. 46.

## VII.  INSTRUCTIONS FOR SERVICE AND NOTICE
## OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a de novo determination by the District Court.[205]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the

---

[205]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[206]

**ORDERED, SIGNED** and **ENTERED** this 11th day of March, 2014.

_Pamela A. Mathy_

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[206] <u>Acuna v. Brown & Root Inc.</u>, 200 F.3d 335, 340 (5th Cir. 2000); <u>Douglass v. United Serv. Auto. Ass'n.</u>, 79 F.3d 1415, 1428 (5th Cir.1996).

41