Martin Victor Hill
P.O. Box 7351 La Verne, CA 91750
(909) 344-4311
mhill.losangeles@live.com
Appearing Pro Se

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| **MARTIN VICTOR HILL, PRO SE** | ) ) ) | Civil Action No. 5:12-CV-00827 |
| Plaintiff, | ) ) |  |
| vs. | ) |  |
| **THE TEXAS DEPARTMENT OF PUBLIC SAFETY, YOLANDA AGUINAGA, AND KEVIN MARMOR** | ) ) ) ) | Jury |
| Defendants | ) |  |

---

**Plaintiff's Response and Objections to the REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE Pamela Mathy**

Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiff Martin Hill files these written objections to the proposed findings, conclusions and recommendations contained in the Report and Recommendation Of United States Magistrate Judge Pamela Mathy filed March 11, 2014. Judge Mathy erred in recommending that the Court deny Plaintiff's Motion for summary judgment and grant Defendants Marmor and Aguinaga Motion for Summary Judgment.

Plaintiff Martin Hill initiated this action on September 4, 2012, and also filed his request application for leave to proceed in forma pauperis (IFP), setting forth information to establish his

inability to prepay the fees and costs. On October 24, 2012, Judge Pamela Mathy issued a report that recommended the Court grant in part and deny in part plaintiff's motion for leave to proceed IFP.

The Court recommended, in part that Hill's motions to proceed IFP should be granted with respect to five proposed claims under: (1) §1983 against the individual defendants for alleged illegal search and seizure on November 10, 2010, in violation of Hill's Fourth and Fourteenth Amendment rights; (2) §1983 against the individual defendants for alleged retaliation on November 10, 2010, in violation of Hill's First Amendment free speech rights; (3) §1983 against Marmor for his alleged illegal demand on November 10, 2010, that Hill produce his identification without reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments; (4) under state law against the individual defendants for alleged false imprisonment on November 10, 2010; and (5) under state law against the individual defendants for alleged intentional infliction of emotional distress on November 10, 2010.

No party filed an objection to the October 24 report. On February 27, 2013, the District Court accepted the recommendations in the October 24 report.

In her 'REPORT AND RECOMMENDATION,' Judge Mathy wrote

"On February 3, 2014, Hill filed a cross-motion for summary judgment. Attached to his motion, plaintiff submits: defendants' initial disclosures, including the DPS investigation; the Federal Motor Carrier Safety Administration ("FMCSA") guide to hours of service; transcripts of the interactions with Marmor and Aguinaga; Hill's statement dated November 19, 2010; the letter from Captain Plunk to Hill; and plaintiff's initial disclosures."

Mathy falsely characterizes the Texas Department of Public Safety's official findings and admission of officer Marmor and Aguinaga's wrongdoing as merely "the letter from Captain Plunk to Hill." In reality the letter of the findings, from the Commercial Vehicle Enforcement Divison of TX DPS, was the official result of the internal affairs complaint filed against defendants Marmor and Aguianaga. Neither Plaintiff Hill nor the defendants Marmor and Aguinaga denied or contested the official TX DPS official admission of wrongdoing.

The admission letter, dated December 20, 2010 and signed by Captain Kenneth Plunk of

the Waco Commercial Vehicle Enforcement Division, stated that **"corrective action was needed"** against both officers and that **"additional training has been taken"** by both officers. (Exhibit 1)

In addition, a TX DPS INTEROFFICE MEMORANDUM dated 12/15/10 from Supervisor Captain Kenneth Plunk, CVE, Region VI, THP Division (Exhibit 2 p. 8) admitted specifically that the Plaintiff Martin Hill was never obligated to show Marmor or Aguinaga his ID. It stated

"Subject: Citizen Complaint by Mr. Martin Hill

"I have reviewed the information provided by Sergeant Christopher McGuairt and the complainant Mr. Martin Hill and formulate the following conclusion. I concur with most of Sergeant McGuairt's findings however a few items need to be addressed.

Sergeant McGuairt is accurate in his statement that it is a legal practice to attempt identification of the driver and passengers, regardless if articulated facts exist to support this request for identification. Though there may be no issue with attempting to identify a passenger, **unless you have an articulate reason regarding your or other's safety or criminal activity is present, the passenger is under no obligation to comply with this request.** When Mr. Hill asked Trooper Marmor if he (Marmor) was requesting or demanding his driver license, Trooper Marmor stated "I'm telling you" - this statement is not a request it is a demand.

At no time did Trooper Marmor state to Mr. Hill that he would be arrested, however he did tell him that it was a "jailable offense" for Failure to Identify. **The charge of Failure to Identify under Penal Code 38.02 would not be applicable to this contact**.

Sergeant McGuairt has addressed with Trooper Marmor his requirements to identify himself properly on future contacts. **Sergeant McGuairt will also address with Trooper Marmor proper procedure and additional training regarding the offense of Failure to Identify and how it relates to roadside contacts."**

Mathy references an internal memo by DPS employee Sergeant McGuiart, as if it is equal to the official findings of the TX DPS internal affairs investigation. Mathy writes "Sergeant McGuiart concluded by stating he saw no need for any future investigations by the DPS because

Aguinaga did not violate any law or policy and Marmor received additional training for his failure to identify himself to Hill."

In reality, McGuiart was merely the employee assigned to the task of interviewing all parties involved, and to present his report to his superiors in the TX DPS. McGuiart neglected to interview Hill, falsely claiming that Hill had left no contact information to the TX DPS.

As Plaintiff Hill wrote in PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT   2/12/14 [1]

"Sergeant McGuairt was merely an employee whose job was supposedly to conduct interviews with the two Defendants, who were under investigation for civil rights abuses, as well as to conduct an interview with the complainant Martin Hill. McGuairt it should be noted was so incompetent or corrupt that he neglected to contact the Plaintiff Martin Hill altogether. McGuairt then lied to his superiors and claimed that no contact information for Hill was available, despite the fact that Hill's name, address, phone number, e-mail, and fax were already on file with the department and listed on all of Hill's various continuous correspondence with TX DPS. (Exhibit 2, p. 9). How convenient for the officers involved that the so-called interviewer, McGuairt, avoided at all costs contact with the person who initiated the complaint. McGuairt went as far as to track down and view Hill's Examiner.com news articles as well as youtube videos of the exchange with Marmor and Aguinaga, still claiming that Hill could not be found. (Both Examiner.com newspaper and  Youtube.com accounts have very clearly listed contact information, even if McGuairt's false claim that Hill had provided no contact information to TX DPS had been true.)   Despite this gross miscarriage of obligation, McGuairt's superiors at the TX DPS still concluded, as a result of the internal affairs investigation, the Defendants Marmor and Aguinaga  were clearly in the wrong. Despite McGuairt's weak attempts at defense of Marmor and Aguinaga, McGuairt's 'opinion' was correctly and immediately dismissed outright."

1.  Docket no. 51

Mathy wrote: "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted."

The Federal Rules on Trucking Safety and hours of service and the importance of getting proper sleep are meticulously documented. This is pertinent material fact. [FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION ] (Exhibit 3) states:

E. Hours of service of drivers § 395.1 Scope of rules in this part.

"(g) Sleeper berths—(1) Property-carrying commercial motor vehicle—(i) In General. A driver who operates a property-carrying commercial motor vehicle equipped with a sleeper berth, as defined in §§395.2 and 393.76 of this subchapter, (A) Must, before driving, accumulate (1) At least 10 consecutive hours off duty; (2) At least 10 consecutive hours of sleeper-berth time; (3) A combination of consecutive sleeper-berth and off-duty time amounting to at least 10 hours..."

FMCSA: DRIVER FATIGUE (Exhibit 4)  states:

"Trucks are a vital component of the U.S. economy. That contribution comes from moving raw and finished products, as well as some bulk goods, long distances. Because of the long distances and long driving times involved in these contributions to our economy, driver hours of service (HOS) have been regulated for more than 70 years. Research on the safety implications of truck driver work hours were investigated in pioneering research during the 1970s (e.g., Harris and Mackie, 1972; Mackie and Miller, 1978)… Both sleeper berth and off-duty status are used for relief from work and driving."

Mathy wrote: "The movant "must demonstrate the absence of a genuine issue of material fact, but does not have "to negate the elements of the nonmovant's case." "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the

nonmovant's response. On the other hand, if the movant meets its burden and the non-movant cannot provide some evidence to support its claim, summary judgment is appropriate."

The material facts provided by Plaintiff Martin Hill was completely ignored by the opposing party.

Mathy wrote: "Whether a defendant is entitled to immunity from suit as a result of qualified immunity is a two step inquiry: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether plaintiff has raised a genuine issue of material fact that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. (pg 15)"

"Law enforcement officials must be held to constitutional and societal standards, particularly because they are granted substantial discretion that may be misused to deprive individuals of their liberties." *Gentile v. State Bar of Nev*., 501 U.S. 1030, 1035-36 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police.)

The defendant's employer admits that the officers were punished and retrained- so the notion of 'qualified immunity,' which requires that the defendant's had no idea that what they were doing was wrong, has no basis whatsoever in fact or reality. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).

As the U.S. Supreme Court ruled in 1979, "Held: The application of the Texas statute to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe that appellant was engaged or had engaged in criminal conduct. Detaining appellant to require him to identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be "reasonable." Cf. *Terry v. Ohio*, 392 U. S. 1; *United States v. Brignoni-Ponce*, 422 U. S. 873. The Fourth Amendment requires that such a seizure be based on specific, objective facts indicating that society's legitimate interests require such action, or that the seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Delaware v. Prouse*, 440 U. S. 648. Here, the State does not contend that appellant was stopped pursuant to a practice embodying neutral criteria, and the officers' actions were not justified on the ground that

they had a reasonable suspicion, based on objective facts, that he was involved in criminal activity. Absent any basis for suspecting appellant of misconduct, the balance between the public interest in crime prevention and appellant's right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas,* 443 U.S. 47

Despite defense counsel's wild claims and Judge Mathy's recommendations, there is no confusion or doubt about the rights of Americans to be free from compulsory ID checks. "These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Brinegar v. United States*, 338 U.S. 160, 176.

The defendants are NOT entitled to qualified immunity. "The qualified immunity doctrine protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether an official is entitled to qualified immunity, we (1) identify the Specific right allegedly violated; (2) determine whether the right was "clearly established;" and (3) determine whether a reasonable officer could have believed that his or her conduct was lawful." *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1363-64 (9th Cir. 1994).

In a commercial truck driving 'Team' operation, while one person is driving, the other must be off-duty in the "sleeper berth" uninterrupted for a minimum of ten hours, according to federal law. [FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION Hours of service of drivers § 395.1] (Exhibit 3) Defendant Aguinaga acknowledged while being recorded that she knew that the Plaintiff Hill was sleeping in the sleeper berth and Aguinaga knew that Plaintiff was not driving. (Exhibit 5, Audio Transcript. pp. 3-4) Marmor was recorded by Plaintiff admitting that he knows the Plaintiff was not driving and that Marmor has a policy of demanding ID from everyone who he pulls over - drivers and passengers alike- without probable cause: (Exhibit 5, pp. 4-9) Excerpts:

•"If you fail to ID, then you can go the other route...

•Let me stop you right there...

•I don't know how far you want to take it- But in Texas, if you fail to ID, that's a jailable offense.

• But, when the federal motor carrier stuff- when you're in the vehicle, and you're being inspected, and- your log book is off limits, I mean, if you're not driving, unless you're sitting up here…If you're in the sleeper berth, then sure, we don't have any right to ask for your logbook, but we damn sure can ID you."

•That's part of the penal code.

•We're talking about criminal law.

•I don't know what it is in California but in Texas, when we have a vehicle stop, we ID everybody in the vehicle. Truck drivers, everybody.

•We ID everybody. We stop you, everybody's getting out."

On the recording, Hill asks Marmor "You have a right to wake up the person in the sleeper?" to which Marmor replied "Yes we do. She (Aguinaga) does too. She can enforce the Federal Motor Carrier law but as far as state law goes, you know that's part of the penal code. I don't know what ya'll call it in California- Well, vehicle code, is probably for traffic. We're talking about criminal law. I don't know what it is in California but in Texas, when we have a vehicle stop, we ID everybody in the vehicle. Truck drivers, everybody. Because I mean we get a lot of people that are wanted. Uh, we get runaways, and- of course you're not a runaway. But I mean we get juveniles and stuff like that that are runaways. So it's a common practice for us to ID everybody in the vehicle. That cuts out 'well why'd you ID me and, you know, uh the last two vehicles you didn't ID everybody'. We ID everybody. We stop you, everybody's getting out. We're out here to enforce the federal law and also the state law. Federal has vehicle inspectors. Now Texas has a policy when inspectors are working then we will have a trooper out here". (Exhibit 5, pp. 4-9).

Under threat of arrest after being illegally detained, Plaintiff showed his ID to Marmor under duress. In his TX DPS internal affairs 'Complaint Response' dated 11/29/10, Defendant Marmor wrote: "The co-driver asked me if I was requesting or demanding his Driver License. I responded by saying, "I'm telling you" at which time the co-driver complied. The California License was checked via in-car computer. The return came back clear. I returned to the passenger side door of the co-driver and returned his license. To my knowledge there was no further communication between the two of us." (Exhibit 2, p. 13).

Rule 56 of the Federal Rules of Civil Procedure provides "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).

Qualified immunity shields certain public officials performing discretionary functions from civil damage liability if their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Whether a defendant is entitled to immunity from suit as a result of qualified immunity is a two step inquiry: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether plaintiff has raised a genuine issue of material fact that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Michalik v. Hermann,* 422 F.3d 252, 257-58 (5th Cir. 2005); *Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000) (citing *Hare v. City of Corinth,* 135 F.3d 320, 325 (5th Cir. 1998)).

Mathy writes "Marmor refused to identify himself, only saying he had the badge and the gun, and demanded Hill's identification... Marmor informed Hill that failing to identify was a jailable offense, and it was Texas policy to identify everyone... Although Hill argues the officers should not have disturbed him in the sleeper berth to ask for his identification, he provides no authority to show it was not permissible for them to ask him to produce identification even if it meant he needed to be awakened to do so. For the right to be clearly established, this Court "must be able to point to controlling authority—or a robust, consensus of persuasive authority

that defines the contours of the right in question with a high degree of particularity." Hill identifies no "robust consensus" of authority..."

Mathy claims that neither defendant did any wrong and that they were following the rules. As has been the demonstrated since this case was filed, Judge Mathy simply 'rubber-stamps' and endorses any and all actions by the two Defendants, who are law enforcement officers- despite the officers both being punished for wrongdoing by their employer, Texas Department of Public Safety. In an attempt to defend the Defendants, Mathy writes:

"But, defendants' uncontested summary judgment evidence, including Marmor and Aguinaga's statements upon which Hill rely, provides that it is routine procedure for all occupants of a vehicle stopped at the weigh station to identify themselves. In the absence of a clearly established right, Marmor did not act unreasonably by relying on the Texas statutes and DPS' routine policy."

In reality Defendants Marmor and Aguinaga clearly acted in direct contradiction to Texas Department of Public Safety official and longstanding policy, and Defendants were punished for their violations of the law by their employer, TX DPS, which admitted wrongdoing in writing to Plaintiff Martin Hill. (Exhibit 1).

Mathy writes: "In sum, although Hill argues his constitutional right to be free from a demand to produce identification was "self-evident," that is clearly established, and Marmor acted unreasonably, this Court cannot conclude that Hill has alleged a right so "clearly established at the time of the violation" "it would have been clear to [Marmor] that his conduct was unlawful." Plaintiff has not met the burden of overcoming the defense of qualified immunity on his claim of illegal demand for identification....

Hill argues "[s]ince [he] had been legally off-duty and sleeping in bed, there was no reasonable suspicion or probable cause or emergency situation which justified the officer's demand for him to either wake up or leave the sleeper berth, or present his ID to any law enforcement officer or agency." But, Hill has not provided summary judgment argument, evidence, and authority to show it is clearly established that law enforcement officers cannot ask a person who is an off-duty co-driver found in a sleeper berth of a truck, even if it is necessary to wake that person, to produce a driver's license, when the vehicle is stopped at a weigh station... Hill has not

demonstrated defendants violated a clearly established right when they required Hill to produce his commercial driver's license. Hill has not provided authority to show there is a "robust consensus" of case law to support his position."

Plaintiff has clearly demonstrated that defendants violated a clearly established right when they required Plaintiff to produce his ID. there was no legal cause whatsoever under state or federal law, and there was no cause whatsoever to demand ID from a sleeping off-duty person under FMCSA regulations:

## CONSTITUTIONAL PROTECTIONS FROM WARRANTLESS SEARCHES AND COMPULSORY ID

A.  In this case, Plaintiff Martin Hill had no reason whatsoever to be bothered by police. He was off-duty sleeping in the sleeper berth of a commercial vehicle. There were no "exigent circumstances", there was no "reasonable suspicion" that a crime had been committed or was about to occur; *Terry v. Ohio,* 392 U.S. 1 (1968). There were no grounds for a warrantless search or arrest, detainment, Terry stop, or for a demand for  identification or driver license.

B.  Brown v. Texas held that absent reasonable suspicion of criminality, the  police can not simply stop people and ask for their names. *Brown v. Texas*, 443 U.S. 47 (1979)

"Detaining appellant to require him to identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be "reasonable."  Cf. *Terry v. Ohio*, 392 U. S. 1; United States v. Brignoni-Ponce, 422 U. S. 873. The Fourth Amendment requires that such a seizure be based on specific, objective facts indicating that society's legitimate interests require such action, or that the seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Delaware v. Prouse*, 440 U. S. 648. Here, the State does not contend that appellant was stopped pursuant to a practice embodying neutral criteria, and the officers' actions were not justified on the ground that they had a reasonable suspicion, based on objective facts, that he was involved in criminal activity. Absent any basis for suspecting appellant of misconduct, the balance between the public interest

in crime prevention and appellant's right to personal security and privacy tilts in favor of freedom from police interference."

C. Miranda v. Arizona - 384 U.S. 436 (1966)

D.The right of privacy may not be intruded upon by the government absent probable cause, see *Dunnaway v. New York*, 442 U.S. 200, 208 (1979); indeed, it is the probable cause requirement that "safeguard[s] citizens from rash and unreasonable interferences with [their] privacy." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

E.*United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975.) The government agents cannot stop and search all vehicles; that is not reasonable under the Fourth Amendment. The exception to the Fourth Amendment is an exceedingly narrow one, *United States v. Place*, 462 U.S. 696 (1983)

F. *Florida v. Royer*, 460 U.S. 491, 500 (1983) "The person approached, however, need not answer any questions put to him; indeed, he may decline to listen to the questions at all and may go on his way" Id. at 497-98. "Failure to observe these limits converts to a Terry encounter into a full-fledged arrest under the Fourth Amendment that can only be justified by probable cause." *Royer*, 460 U.S. at 1325; *Dunaway,* 442 U.S. at 216; *Brignoni-Ponce,* 422 U.S. at 881-82.

G. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings"

H. *Haynes v. United States*, 390 U.S. 85, 97 (1968)

I. *Illinois v. Wardlow,* 528 U.S. 119, 125 (2000) "If they do not learn facts rising to the level of probable cause, an individual must be allowed to go on his way."

J. *Brinegar v. United States* - 338 U.S. 160 (1949) "The citizen who has given no good cause for believing he is engaged in [criminal] activity is entitled to proceed on his way without interference" (Page 338 U. S. 177)

K. *Kolender v. Lawson*, 461 U.S. 352, 369 (1983).Probable cause, and nothing less, represents the point at  which the interests of law enforcement justify subjecting an individual to any significant intrusion beyond that sanctioned in Terry. See also Kolender, 461 U.S. at 366-67 noting that states "cannot abridge this constitutional rule by making it a crime to refuse to answer police questions during a Terry encounter."

L. Texas may not criminalize by statute or practice conduct that is Constitutionally protected *Coates v. Cincinnati*, 402 U.S. 611, 616 (1971)

M. *Berkemer v. McCarty*, 468 U.S. 420 (1984) An individual stopped pursuant to Terry is not "in custody" for purposes of Miranda v. Arizona, 384 U.S. 436 (1966), precisely because the individual remains free to ignore or otherwise decline to respond to an officer's questions.

N. *Michigan v. DeFillippo*, 443 U.S. 31, 40 (1979)

O. *Adams v. Williams*, 407 U.S. 143 (1972)

P. *Camara v. Municipal Court*, 387 U.S. 523, 534-35 (1967)

Q. *United States v. Robinson*, 414 U.S. 218, 227-28 (1973)

R. *Papachristou v. City of Jacksonville,* 405 U.S. 156 (1972) "A statute which serves as "merely the cloak" for arrests which would not otherwise be lawful is a pernicious affront to the Fourth Amendment and cannot be upheld."

S. In *Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177 (2004), The issue was whether someone who had been lawfully subject to a Terry stop can also be required to provide his name to the police officer who stopped him. The justices answered yes (5-4) but all nine justices agreed that a person who is not behaving in a way that gives rise to an articulable suspicion of criminality may not be required to state his name or show identification. The Hiibel majority took care not to disturb precedents like Brown v. Texas.

Mathy writes "Hill also contends the FMCSA regulations require he get ten hours of uninterrupted off-duty time in the sleeper compartment; specifically, Hill argues "[e]xiting the sleeper berth for any reason violates FMCSA regulations and would subject [him] to criminal prosecution." Original complaint at 4. But, Hill provides no authority to show that any violation

of the regulations about rest period afforded the off-duty driver arising when hill exited the sleeper berth is not cured by Hill simply starting a new ten-hour clock of uninterrupted off-duty time such that the purported criminal violation would arise if Hill falsified his records of rest and offduty time, not that he exited the compartment to comply with the request of a law enforcement officer."

Mathy misinterprets the law and opines directly contrary to long-standing FMCSA regulations by claiming that officers have a right to blatantly impede interstate commerce without cause. Mathy asserts that law enforcement officers can interrupt, at will, any and all commercial driver's sleep in the sleeper berth for no reason whatsoever. The sleeper berth is sacrosanct- no different from a private home where any person in America is sleeping in bed. Without probable cause, reasonable suspicion, compulsory ID checks are not lawful in the United States, including in Texas. Officers can not bang on the window of Americans bedrooms (or sleeper berths) and demand ID for no reason under threat of arrest and under color of law. For a commercial truck driver, as Mathy puts it, to "simply starting a new ten-hour clock of uninterrupted off-duty time" at the whim of random officers without cause is not only a clear Constitutional violation, but such a policy would cause chaos, making tightly scheduled freight deliveries late across the country and would be a violation and warrantless interruption of commerce. No rule or law in the Federal Motor Carrier Safety Adminsitration (FMCSA) Manual allows the random violation of 10 hour sleeper berth rules. In fact, the rules state just the opposite. The rules are there for a reason, to protect driver and motorist safety across the highways of America.

Commercial team driver operations exist so that the truck and freight is always moving- it is beyond absurd that all commercial drivers can 'simply start' their ten hour sleep time all over again at the whim of some random power-starved corrupt cop, over after they are already sleeping in their mandated hours. If drivers could be woken up and disturbed at every weight station and checkpoint across America without probable cause, there would be no reason to have mandated sleeper berth rules.

Plaintiff  has provided more than enough authority to prove that warrantless violation of the FMCSA regulations by rogue police rises to the level of a constitutional violation cognizable under § 1983.

## CONCLUSION

Despite what biased judiciary or other misguided statists might personally believe, police in the United States are not 'gods' exempt from the very laws they are sworn to uphold and enforce. Police are not allowed, and have no authority, to mandate compulsory ID checks without probable cause. That is repugnant to the Bill of Rights, and any act repugnant to the constitution is void. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137; 2 L. Ed. 60 (1803)

People have inherent human dignity and God given rights, endowed by their Creator. Truck drivers have the right to sleep peacefully and not be illegally woken up for no reason. This is a grave safety matter, a civil rights issue, and human rights issue.

For all of the above foregoing reasons, the Court should reject Magistrate Judge Mathy's Report and Recommendations, deny the Defendant's Motion for Summary Judgment, and grant Plaintiff Martin Hll's Motion for Summary Judgment. This Court should also order the Defendants to disclose responsive records or to explain why those records or parts of those records are exempt from Discovery disclosure requirements.

Plaintiff requests that this court stop further proceedings and stay of proceedings from the report and recommendation and Plaintiff moves for a continuance of a Summary Judgment proceeding.

WHEREFORE the plaintiff requests that this Honorable Court:
A. Grant his motion for Summary Judgment;
B. Award him nominal damages; and
C. Grant whatever additional relief is necessary and just.

Respectfully submitted,

Martin Victor Hill
*Appearing Pro Se*
P.O. Box 7351, La Verne, CA 91750
Mhill.losangeles@live.com
(909) 344-4311

## Notice of Electronic Filing

I, Martin Victor Hill, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing  in accordance with the Electronic Case Files System of the Western District of Texas, on this the  25th day of  March, 2014.

/s/ Martin Victor Hill
MARTIN VICTOR HILL
*Appearing Pro Se*

## Certificate of Service

I, Martin Victor Hill, do hereby certify that a true and correct copy of the above and foregoing **Plaintiff's Response and Objections to the REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE Pamela Mathy** has been served by means of  the Western District of Texas's CM/ECF filing system, in accordance with the  Federal Rules of Civil  Procedure on this the 25th  day of  March, 2014, addressed to all parties of record.

/s/ Martin Victor Hill
MARTIN VICTOR HILL
*Appearing Pro Se*

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARTIN VICTOR** | ) | **Civil Action** |
| **HILL,** | ) | **No.5:2012cv00827** |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| **TDPS, ET. AL.,** | ) | |
| **Defendants** | ) | |

# <u>ORDER</u>

Came on to be heard  **Plaintiff's Response and Objections to the REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE Pamela Mathy,** and any responses thereto.

This  Court, after considering the pleadings of the parties filed herein, is of the opinion  that the following order should issue: It is hereby ordered that

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** is hereby GRANTED.

SIGNED on this the _____ day of_____, 2014**.**

_____
JUDGE PRESIDING